## CONTROVERSY AT TO OWNERSHIP OF STOCK.

### Common Pleas Court of Hamilton County.

WILLIAM H. DURRETT V. THE BELLEVUE BREWING COMPANY ET AL.

#### Decided, April Term, 1919.

*Husband and Wife—Ownership of Stock Standing in Name of Insane Husband Claimed by Wife—Jurisdiction.*

A controversy as to whether certain corporate stock belongs to the wife or to her insane husband is within the jurisdiction of the court of common pleas.

*Littleford & Ballard* for Mrs. Klotter.

*Galvin & Bauer* and *Renner & Renner,* contra.

DARBY, J.

This action is before the court upon the answer to Lydia Klotter, in which she claims to be the owner of certain stock in the Bellevue Brewing Company, which, however, on the records of the company stands in the name of her husband, Eugene W. Klotter; and also upon her cross-petition against plaintiff and certain defendants to recover upon an alleged contract entered into between all of the stockholders and pledgees of the stock of the brewing company, by which said contract she was to receive $100 a month for her support and maintenance out of the proceeds of the operations of the brewing company.

The first point to be discussed is a demurrer filed by the brewing company to the said answer upon the ground that the claim of Mrs. Klotter is to stock standing in the name of her husband, an insane person, and whose guardian she is, and, therefore, that this court has no jurisdiction of the subject-matter.

It is the claim of the demurrant that General Code, Section 10492, gives to the Probate Court exclusive jurisdiction concerning the administration of the estate of the insane person, and, therefore, that the determination of the rights of the wife to this stock can not be made by this court.

Not disputing the general proposition that the Probate Court has exclusive jurisdiction in certain matters, it must be kept in

mind that the answer claims certain stock of the brewing company to belong to Mrs. Klotter.

This action was instituted by the plaintiff to recover certain money due from the brewing company. The brewing company admitted the debt and answers and cross-petitions were filed by other defendants, resulting in the appointment of a receiver and the operation of the brewing company for sometime thereafter. An order was made by this court on July 22, 1918, confirming the report of the receiver and distributing proceeds, etc. A judgment for a large sum of money was given against Mrs. Klotter, as guardian of her husband, in favor of other defendants. The concluding paragraph of this order reserves for further consideration the claims of Lydia G. Klotter, guardian and individually, as set up in her answer and cross-petition in this case. All of the debts of the brewing company were paid and the distribution which has been ordered is to the stockholders of a certain dividend, and Mrs. Klotter is now claiming the dividend upon the forty-two shares of stock referred to in her answer.

The real question then to be determined, so far as this claim is concerned, is, as to whether Mrs. Klotter is the owner of this stock, and it would seem that the cause being generally before this court and within its jurisdiction, that there is no propriety in the suggestion that the Probate Court should first determine her rights to the stock before this court can make a distribution.

The demurrer to said answer will therefore be overruled.

The second question for consideration is upon the merits of the answer of Mrs. Klotter.

It must be kept in mind that Mrs. Klotter is the guardian of her husband, in whose name this stock stands on the books of the brewing company, and her claim is therefore adverse to him, and under General Code, Section 11495, she is not a competent witness except as to the specific matters set forth by way of exceptions.

Briefly stated, the evidence was that some time in November, 1911, Mrs. Klotter and her husband went to the office of Judge

Littleford, in the First National Bank Building.   At that time there was an action for alimony pending at the suit of Mrs. Klotter against her husband, in which Mr. Stanley E. Bowdle was her counsel and Judge Littleford represented Mr. Klotter. Upon going into his office Mrs. Klotter stated, in the presence of Judge Littleford and her husband, that they had been at Mr. Bowdle's office to see him but he was not in and they had therefore come to Judge Littleford's office.   She further stated that they had entered into an agreement of reconciliation, a condition of which was that Mr. Klotter was to transfer to her the stock named in the answer to protect her in case of further trouble between her and her husband, and that the case was to be dismissed.   Mr. Klotter assented to this statement of his wife, and, having with him the stubs of the stock-book, he wrote upon certain stubs: "This stock belongs to Lydia G. Klotter." Mrs. Klotter then stated that she had the certificates and Mr. Klotter said that that was true.

Judge Littleford was called to prove the facts above stated, and, though objection was made to his testimony on the ground that he was counsel for Mr. Klotter, he was permitted to testify to said statements and the actions of Mr. Klotter upon the theory that what was said and done at the time referred to were not communications made to him by his client in the relation of attorney and client, and that in no event could the statement made in his presence by Mrs. Klotter, who was not his client, be a privileged communication, and the evidence was admitted upon the further ground that the presence of the adverse party showed that what was said and done was not intended to be nor considered by any of them as privileged communication.

The testimony given by Judge Littleford further was that at the hearing in the United States Court, in a proceeding against the brewing company, in which Eugene W. Klotter was a party, the stub-book referred to was exhibited and that the writings upon the stubs made by Mr. Klotter, as before testified to, had been erased.   He further testified that Eugene Klotter was a witness at that hearing and was asked why he erased the entry on the stubs and he said: "Because he had— some-

thing to the effect 'because I took the stock back.' That was about what he said." The stub-book was offered in evidence and bears evidence of erasure upon each one of the stubs referred to by the witness.

No other evidence was offered on behalf of Mrs. Klotter upon this claim.

The evidence offered on behalf of the brewing company was that though this alleged transaction occurred in 1911, the stock had never been transferred to Mrs. Klotter on the books of the company, neither had she ever voted the stock at any meeting of the stockholders. No dividends on said stock were paid to her.

If Mrs. Klotter actually had the certificates at the time of the transaction in Judge Littleford's office she returned them to her husband because the evidence is that he used them to borrow money thereafter. His statement in the United States Court was that he had made the erasure of the writing because he had "taken the stock back." There is no explanation in the record as to how he "took the stock back," the terms, conditions or agreement under which it was done, but simply the fact that he took it back, and the fact that he afterwards borrowed upon it shows clearly that he did have it in his possession. During all of this time Mr. Bowdle was attorney for Mrs. Klotter and his testimony was that she at no time exhibited to him any certificates of stock, and there is no evidence of any claim that Mrs. Klotter at any time requested a transfer to her of the stock. Mr. Bowdle testified that he prepared an income tax return for Mrs. Klotter, as guardian, on or about March 27, 1916, in which was included the total dividends paid on all the stockholdings in the brewing company held by Eugene Klotter, including the shares now claimed by her. Mr. Bowdle testified that the details for this report he secured from the secretary of the brewery and that Mrs. Klotter afterwards came in and swore to the return. There was also offered in evidence the inventory in the estate of Eugene W. Klotter, in the Probate Court, filed March 30, 1916, and also prepared by Mr. Bowdle. This inventory includes

nine hundred and eighty-three shares of stock in the brewing company, which, of course, includes the part now claimed by Mrs. Klotter, but, as part of that inventory, appears the following by way of explanation:

"A portion of said stock being also subject to a claim of ownership by this guardian, who is the wife of said ward."

Mrs. Klotter, testifying under the first exception to Section 11495, General Code, as to facts which occurred after the appointment, admitted signing the tax return and inventory, but stated that they were prepared for her by her counsel, in whom she had confidence, and she signed them because he instructed her to do so. It will be observed, however, that in return and the inventory were made after her appointment as guardian.

Mrs. Klotter's statement to Judge Littleford that she wanted this stock to protect herself against her husband's future actions is entirely inconsistent with her failure to have the transfer made; the redelivery certificates to him to use as he might see fit under some plan or contract not shown to the court, and the receipt by him of the dividends on this stock, contradicts her claim of ownership.

Upon a consideration of all the facts in the case, as outlined above, the court is unable to reach any other conclusion than that there is not sufficient evidence to sustain the claim of Mrs. Klotter that this stock belongs to her, and judgment will be entered against her upon her answer.

Next, the brewing company and the receiver filed a demurrer to the answer and cross-petition of Mrs. Klotter, upon the ground that it did not state facts sufficient to constitute a cause of action.

The cross-petition prays that—

"The receiver be ordered, in distributing the assets of the corporation, to pay out of the assets in his hands to this petitioner the said sum of sixteen hundred ($1,600.00) dollars, with interest as aforesaid, and if there should not be sufficient assets to pay said claim in full that personal judgment be given her against the other defendants and the plaintiff for the said sum of sixteen hundred ($1,600.00) dollars, with interest as afore-

said, or any unpaid balance thereof, and for such other relief as is proper."

The agreement referred to was signed by all of the stockholders and pledgees of stock of the brewing company.

It seems that there had been considerable litigation in the United States court of this district and that during said litigation Mrs. Klotter was appointed guardian of her husband. She was not employed by the brewing company and had no claim against it. The records indicates that her husband had become insane and was in an asylum. She held no stock in the company in her own name and had no claim of being a stockholder except as to the forty-two shares hereinbefore referred to. Toward the end of this litigation the agreement was signed and contained this provision:

"4. During the period of the employment of said Osterfeld (as superintendent) the revenues derived from the operation of said brewery shall be applied as follows:

(a) To the payment of the operating expenses thereof, including the sum of one hundred ($100,00) dollars per month to Lydia Klotter, Guardian of Eugene Klotter, for her maintenance and support."

Then follows other agreements as to the operation of the company. Thereafter Mrs. Klotter was regularly paid the sum of $100 a month until the board of directors of the brewing company directed the manager to discontinue such payments. Mrs. Klotter now seeks judgment for $1,600, claimed to be due her at the rate of $100 a month under said agreement.

It is the claim of the brewing company that the so-called agreement or contract was without consideration and is unenforcible. On the other hand, Mrs. Klotter's claim is that the consideration of the United States court and the return of the company to the control of the stockholders, thus getting rid of the receivership which was then pending in that court.

As stated, Mrs. Klotter rendered no services to the company of any kind. She had no interest in the litigation. Covering the year ending about the time of this agreement she received, as guardian, upon the stock of her husband in the brewing com-

pany, some $33,000 out of which, of course, she was entitled to her support.

The court is unable to find that there was any adequate consideration for this contract to pay Mrs. Klotter $100 a month, and the board of directors was clearly within its rights in ordering a discontinuance of payments.

The cross-petition of Mrs. Klotter will, therefore, be dismissed.